UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IAN McMILLIAN,

              Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

              Defendant.

Case No. C10-5877-JLR-BAT

**REPORT AND RECOMMENDATION**

Ian McMillian seeks review of the denial of his Supplemental Security Income application by the Commissioner of the Social Security Administration. He contends that the ALJ erred by (1) improperly evaluating the medical and lay witness evidence, (2) improperly finding Mr. McMillian not fully credible, and (3) incorrectly assessing Mr. McMillian's residual functional capacity and finding him not disabled at step five. Dkt. 15. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Mr. McMillian is currently 40 years old, has completed the 12th grade, and has worked as a U.S. Coast Guard seaman apprentice, steel worker, and warehouseman.[1] On April 17, 2008, he

---

[1] Tr. 115, 138, 141.

REPORT AND RECOMMENDATION - 1

applied for SSI benefits, alleging disability as of February 14, 2007.[2] Tr. 115. His application was denied initially and on reconsideration. Tr. 55, 64. The ALJ conducted a hearing on October 16, 2009, and on November 4, 2009, issued a decision finding Mr. McMillian not disabled. Tr. 10-23. As the Appeals Council denied Mr. McMillian's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ made the following findings:

**Step one:** Mr. McMillian had not engaged in substantial gainful activity since April 17, 2008. Tr. 15.

**Step two:** Mr. McMillian had the following severe impairments: moderate meniscus tear in left knee, bipolar disorder, antisocial disorder, and drug and alcohol abuse in sustained remission. *Id*.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual functional capacity:** Mr. McMillian had the residual functional capacity to perform light work except he cannot climb ladders, ropes, or scaffolds; cannot use foot controls on the left; needs simple, unskilled work with an SVP or one or two that requires only minimal interaction with co-workers and only brief and superficial contact with the general public; and routine low stress work that does not involve significant changes or adaptations. Tr. 17.

**Step four:** Mr. McMillian could not perform his past work. Tr. 21.

**Step five:** As there exists a significant number of jobs Mr. McMillian can perform, he is not disabled. *Id*. at 21-22.

---

[2] Mr. McMillian applied for disability insurance benefits on the same day. Tr. 129. This claim was denied because Mr. McMillian did not have enough work credits to qualify for DIB. Tr. 51. This decision is not at issue in this case.
[3] 20 C.F.R. § 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

# DISCUSSION

## A. The ALJ's evaluation of the medical opinions

Mr. McMillian argues that the ALJ erred in evaluating the opinions of treating doctors Andrew Weitzman, Psy.D., Richard Shuey, M.D., and Patricia Gardner, M.D.; examining doctors Kim Webster, M.D. and George Mecouch, D.O.; and non-examining doctor Arthur Lewy, Ph.D.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 1. *Dr. Weitzman, Dr. Shuey, and Dr. Gardner*

Mr. McMillian began treatment at Columbia River Mental Health in 2003, seeing numerous providers over the years, including Dr. Weitzman, Dr. Shuey, and Dr. Gardner. In July 2008, Dr. Weitzman noted that Mr. McMillian appeared anxious, agitated, unsure, worried,

distraught, and tearful, although he was also attentive, disclosing, open, and responsive. Tr. 430. In September 2008, Dr. Shuey diagnosed Mr. McMillian with bipolar mood disorder, major depressive disorder, panic disorder with agoraphobia, and Cluster B traits,[5] and assigned him a Global Assessment of Functioning score of 45, which represents serious symptoms or a serious impairment in social, occupational, or school functioning.[6] Tr. 447. In June and September 2009, Dr. Gardner diagnosed Mr. McMillian with bipolar disorder, panic disorder, Cluster B traits, and possible history of Asperger's syndrome. Tr. 520, 522. Mr. McMillian points out that the ALJ did not address any of these specific records and asserts that the ALJ thus improperly rejected the evidence without explanation. Dkt. 15 at 12-13.

An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id.* at 1394-95.

It is not even clear that the ALJ in fact rejected all of this evidence. Dr. Shuey's and Dr. Gardner's diagnoses include the mental impairments the ALJ found to be severe—bipolar disorder and personality disorder. The ALJ accepted that Mr. McMillian had these severe impairments; her failure to mention each and every instance where a doctor diagnosed them was not erroneous. In addition, while both doctors include additional diagnoses that the ALJ did not find to be severe impairments, Mr. McMillian does not assert that the ALJ erred at step two or point to other evidence supporting an argument that the ALJ should have found additional mental

---

[5] Cluster B traits are associated with certain types of personality disorders. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 701-17 (4th ed. 1994).
[6] *See id.* at 34.

impairments. Various doctors diagnosed Mr. McMillian with various impairments throughout the record. As a diagnosis alone is not sufficient to establish the existence of an impairment or any functional limitations caused by an impairment, the ALJ's failure to mention each individual diagnosis, in and of itself, was not erroneous.

Similarly, the Court declines to find that the ALJ's failure to mention the GAF score assessed by Dr. Shuey was a reversible error. A claimant's GAF score may be relevant evidence of his overall level of functioning. But without more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score. *Florence v. Astrue*, No. EDCV 08-0883-RC, 2009 WL 1916397, at *6 (C.D. Cal. July 1, 2009) (unpublished opinion) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Various practitioners evaluated Mr. McMillian's GAF score numerous times throughout the record. Mr. McMillian does not explain how the ALJ's failure to mention this particular score made the ALJ's analysis of the evidence as a whole deficient. The ALJ is not required to discuss each and every assessment of Mr. McMillian's GAF score.

And finally, Dr. Weitzman observed Mr. McMillian's appearance at a counseling session, but he did not express an opinion on the nature of Mr. McMillian's impairments or his functional capacity. Mr. McMillian does not explain how an analysis of Dr. Weitzman's comments would have substantively affected the outcome of the ALJ's decision. The ALJ's failure to mention these particular records does not necessitate reversal.

2.  *Dr. Webster and Dr. Mecouch*

Dr. Webster examined Mr. McMillian in July 2008 and diagnosed left knee pain with a positive McMurray test, suggesting a medial meniscal tear, and depression. Dr. Webster opined that he would limit Mr. McMillian's standing and walking to less than two hours and lifting and

carrying to 20 pounds occasionally and 10 pounds frequently, and he would limit bending, stooping, crouching, etc. Tr. 372-76. The ALJ gave "probative weight" to Dr. Webster's opinion because of his board certification in family medicine and because his opinion is consistent with the medical evidence of record. Tr. 19.

Despite the fact that the ALJ stated she gave probative weight to Dr. Webster's opinion, she found that Mr. McMillian was able to perform the full range of light work with certain postural restrictions. Light work requires the ability to stand and walk for six hours in an eight-hour workday. *See* 20 C.F.R. § 416.967; Social Security Ruling 83-10. The ALJ thus, without explanation and contrary to the weight she gave the opinion, failed to include Dr. Webster's opinion that Mr. McMillian is limited to less than two hours' standing and walking. This was error that requires remand for the ALJ to reassess Mr. McMillian's residual functional capacity. On remand, the ALJ should either correctly incorporate Dr. Webster's opinion into her residual functional capacity assessment, as she stated she meant to do, or reevaluate the opinion, giving specific and legitimate reasons for any change in the weight she gives it.

Dr. Mecouch examined Mr. McMillian in August 2008 and diagnosed schizoaffective schizophrenia, rule out atypical bipolar with psychosis or paranoid schizophrenia, questionable attention deficit hyperactivity disorder, and alcohol abuse in remission for 17 years. Tr. 379. He noted Mr. McMillian was having difficulty with auditory hallucinations and concentration, despite receiving treatment and being on multiple medications. *Id.* Dr. Mecouch opined: "I would think, given his family background, that with proper job coaching and adequacy in controlling his medications, he could get back into some kind of long term work situation especially given the things he is able to do around the house . . . . At this time, though, given the command nature of his hallucinations the changes in his mood, I think it would be very difficult

for him to hold full time employment especially with pace and persistence." *Id.* The ALJ gave "probative weight" to Dr. Mecouch's opinion because of his board certification in psychiatry and because his opinion was consistent with the medical evidence of record. Tr. 19. The ALJ stated that she accommodated for Mr. McMillian's difficulty with pace and persistent in her residual functional capacity finding. *Id.*

Mr. McMillian asserts that the ALJ failed to include the limitations opined by Dr. Mecouch in her residual functional capacity assessment. Dkt. 15 at 13. However, the ALJ found that Mr. McMillian needed simple, unskilled work with a specific vocational preparation of one or two and routine low-stress work that does not involve significant changes or adaptations. Tr. 17. Although Mr. McMillian may disagree, this was a rational interpretation of Dr. Mecouch's opinion that Mr. McMillian can work but would have difficulties with pace and persistence. And where the ALJ's interpretation is rational, the Court must uphold it. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court finds that the ALJ did not err in evaluating Dr. Mecouch's opinion.

*3.  Dr. Lewy*

Consultative psychologist Dr. Lewy reviewed the record in August 2008 and opined that Mr. McMillian had no severe psychiatric impairment and no significant problems with daily living, social functioning, and concentration, persistence, and pace. Tr. 383-95. The ALJ gave "probative weight" to Dr. Lewy's opinion because of his specialty in psychology and because his opinion was consistent with the medical evidence of record. Tr. 20.

Mr. McMillian asserts that because Dr. Lewy is a non-treating, non-examining doctor, his opinion cannot by itself constitute substantial evidence to justify rejecting a treating doctor's opinion and that Dr. Lewy's opinion that Mr. McMillian does not have a severe mental

impairment is inconsistent with most of the evidence. Dkt. 15.

The Court notes that even though Dr. Lewy opined that Mr. McMillian did not have a severe mental impairment, the ALJ found that Mr. McMillian had the severe mental impairments of bipolar disorder and antisocial disorder. Thus, it was inconsistent for the ALJ to adopt this aspect of Dr. Lewy's opinion. However, any error was harmless, as the step-two issue was resolved in Mr. McMillian's favor. Similarly, while Dr. Lewy opined that Mr. McMillian had no significant mental limitations, the ALJ found that Mr. McMillian had mild or moderate mental limitations and incorporated those limitations in her residual functional capacity finding. And while the Court agrees that Dr. Lewy's opinion would not be sufficient to reject a treating or examining doctor's opinion, there is no evidence the ALJ relied on it to do so. Mr. McMillian has not shown that the ALJ's analysis of Dr. Lewy's opinion affected her residual functional capacity assessment. The Court therefore declines to find that the ALJ erred in assessing Dr. Lewy's opinion.

In sum, the Court concludes that the ALJ erred by failing to incorporate Dr. Webster's opinion into her residual functional capacity assessment despite giving great weight to the opinion. But the ALJ did not err in assessing the other medical evidence. The ALJ thus should reevaluate Dr. Webster's opinion and its affect on Mr. McMillian's residual functional capacity on remand.

**B.    The ALJ's evaluation of the lay witness evidence**

Mr. McMillian argues that the ALJ erred in rejecting the evidence from CRMH treating mental health care providers Shawn Mathis, MS, RC, MHP, Catherine Owen, ARNP, Edward Rosanski, MN, ARNP, CS, Orawan Laochumnanvanit, ARNP, and John Bianco, MA, RC; and non-examining state agency consultant Christine Vu.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Counselors and nurse practitioners are not acceptable medical sources who can give medical opinions. *See* 20 C.F.R. § 416.913(a). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p. These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors. *Id.*; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p.

   1.   *Ms. Mathis, Mr. Rosanski, and Ms. Laochumnanvanit*

In September 2007, Ms. Mathis assigned Mr. McMillian a GAF score of 40. Tr. 228. In November 2007, Mr. Rosanski assigned a GAF score of 44. Tr. 321. In July 2008, Ms. Laochumnanvanit assigned a GAF score of 48. Tr. 449. The ALJ mentioned Ms. Mathis's assessment, but did not state what weight she was assigning to it. Tr. 18. The ALJ did not mention Mr. Rosanski's or Ms. Laochumnanvanit's assessments. Mr. McMillian again asserts that this was error because the ALJ ignored significant, probative evidence without comment. However, as with Dr. Shuey's GAF score, the Court declines to find that the ALJ's failure to comment on these individual GAF scores in and of itself was reversible error. *See Florence*, No. EDCV 08-0883-RC, 2009 WL 1916397, at *6.

### 2. *Ms. Owen and Mr. Bianco*

In November 2007, Ms. Owen stated that Mr. McMillian was being treated for bipolar disorder. She did not feel that Mr. McMillian was able to work at that time. She further stated that Mr. McMillian had had trouble holding numerous jobs over the past year, had been in and out of legal problems, and was at that time hospitalized. Tr. 474. In June 2008, Ms. Owen opined that Mr. McMillian was not stable on his current medications and would not be able to hold any gainful employment. Tr. 269. The ALJ assigned limited weight to Ms. Owen's opinion because it was not consistent with the medical evidence of record and because an ARNP is not an acceptable medical source. Tr. 18.

When evaluating the opinion of an acceptable medical source, to simply say that the opinion is not supported by the medical evidence is a conclusory statement and not an adequate reason to reject the opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Although the ALJ need only give germane reasons for rejecting Ms. Owen's opinion, the Court finds that the same reasoning applies here. A generalized, conclusory assertion about a treating nurse practitioner's opinion is neither a specific nor a germane reason to reject that opinion.

In addition, although the ALJ may give Ms. Owen's opinion less weight because she is not an acceptable medical source, the record does not show that the ALJ considered any of the other factors relevant to the evaluation of other source medical evidence. Thus, the Court cannot say that the ALJ properly assessed Ms. Owen's opinion. On remand, the ALJ should reconsider Ms. Owen's opinion and the weight it deserves.

In August 2008, at his first counseling session with Mr. McMillian, Mr. Bianco noted that Mr. McMillian reported that when he is not on his medications he hears voices that make him paranoid. Tr. 426. In September 2008, Mr. Bianco reported that Mr. McMillian was in crisis

because it was possible he could become homeless and he was very upset and tearful. Tr. 417. In September 2009, Mr. Bianco diagnosed Mr. McMillian with bipolar disorder with psychotic features with full inter-episode recovery; rule-out Asperger's disorder, and polysubstance dependence in sustained full remission, and assigned Mr. McMillian a GAF score of 45. Tr. 493. Mr. Bianco reported that Mr. McMillian had decided to not pursue employment but to go back to college. *Id.* The ALJ assigned "substantive weight" to Mr. Bianco's opinion because of "his specialty in longitudinal relationship" with Mr. McMillian and because his opinion was consistent with the medical evidence of record. Tr. 19-20. The ALJ concluded, however, that she was not bound by Mr. Bianco's GAF assessment of 45 because a GAF score is a subjective clinical impression of a claimant's overall functioning, with dubious applicability to the claimant's social and occupational functioning,. Tr. 20 (citing *Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664 (6th Cir. Feb. 11, 2000)). The ALJ also noted that the Commissioner has declined to endorse the GAF score for use in Social Security programs. *Id.* (citing *Wind v. Barnhart*, 133 Fed. Appx. 684, 2005 WL 1317040 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000))).

The only error in assessing Mr. Bianco's opinion Mr. McMillian asserts is that the ALJ failed to consider his GAF score of 45. Dkt. 15 at 13. The ALJ expressly considered Mr. Bianco's assessment of Mr. McMillian's GAF score, but declined to adopt it as a measure of Mr. McMillian's functional capacity. As the ALJ noted, the Commissioner has declined to endorse the use of GAF scores in disability evaluations, finding that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. at 50764-65. The ALJ's decision not to adopt Mr. Bianco's GAF score was not error.

3.   *Ms. Vu*

Ms. Vu completed a physical residual functional capacity assessment in August 2008. She opined that Mr. McMillian could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day, with certain postural limitations and avoiding extreme cold. Tr. 397-404. The ALJ assigned "probative weight" to Ms. Vu's opinion because it was consistent with the medical evidence of record. Tr. 20.

Mr. McMillian asserts that, insofar as Ms. Vu's opinion contradicts Dr. Webster's opinion, it is entitled to no weight. Dkt. 15 at 14. An ALJ may not rely solely on the contrary opinion of a non-examining doctor to reject an examining doctor's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, Ms. Vu reviewed Dr. Webster's opinion in forming her assessment of Mr. McMillian's residual functional capacity. Ms. Vu opined that Dr. Webster's opinion was not supported by the objective medical evidence and rejected his opinion that Mr. McMillian was limited to less than two hours' standing or walking. Tr. 404. On remand, when reevaluating the weight to give to Dr. Webster's opinion, the ALJ may not reject Dr. Webster's opinion solely because Ms. Vu's assessment is contradictory.

**C.     The ALJ's credibility assessment**

Mr. McMillian argues that the ALJ erred in finding him not fully credible. Dkt. 15 at 14. The ALJ did not find that Mr. McMillian was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v.*

*Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ gave several reasons for finding that Mr. McMillian was not fully credible. The ALJ found that Mr. McMillian exaggerated his subjective complaints and that those complaints were inconsistent, both internally and with other information in the record. Tr. 20. Inconsistent statements about subjective symptoms are a relevant factor in evaluating a claimant's credibility. *Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

The ALJ found that despite his allegations that he cannot perform any work activity, Mr. McMillian testified that he can walk reasonably well with his torn meniscus and only uses Tylenol and ibuprofen for pain. The ALJ also found that Mr. McMillian testified that he has agoraphobia, but has never received treatment for this condition. The ALJ noted that Mr. McMillian enrolled in college to study computer programming, but testified that he cannot work because he is afraid to leave the house and cannot focus and stay on task. Finally, the ALJ noted that Mr. McMillian testified that he had never abused alcohol and drugs, even though he was incarcerated for theft while drinking and abusing pills. Tr. 20-21.

Mr. McMillian asserts that his testimony about his knee pain and the resulting limitations was consistent with Dr. Webster's opinion. Dkt. 15 at 15. While this may be true, the ALJ found that it was inconsistent with Mr. McMillian's other statements. The ALJ properly considered the internal consistency of Mr. McMillian's own statements.

Mr. McMillian also asserts that Dr. Shuey and Ms. Laochumnanvanit diagnosed him with panic disorder with agoraphobia and he thus received treatment for the disorder at CRMH. Dkt. 15 at 15. These providers did list this as a diagnosis for Mr. McMillian. However, even if the

ALJ should have considered this diagnosis in conjunction with her credibility assessment, an error in a credibility assessment may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). The Court concludes that the other reasons the ALJ gave to find Mr. McMillian not fully credible provide substantial evidence to support her credibility assessment.

Mr. McMillian also asserts that there is no evidence in the record that he actually enrolled in college. Dkt. 15 at 15. However, while the record does not contain any documentation of enrollment in college, there are contains numerous instances where Mr. McMillian and his providers discuss his plans and preparations for returning to school. The ALJ did not err by considering these statements.

In general, Mr. McMillian offers alternative explanations for the inconsistencies found by the ALJ. But where, as here, the ALJ's interpretation is rational, the Court must uphold it over any other possible interpretations. *Thomas*, 278 F.3d at 954. The inconsistencies in Mr. McMillian's statements were a clear and convincing reason to find him not fully credible.

The ALJ also found that Mr. McMillian's poor work history undermined his credibility. Tr. 21. A claimant's poor work history may be a valid basis for questioning his credibility. *Thomas*, 278 F.3d at 959. The ALJ found that Mr. McMillian's earnings record reflects sporadic work prior to his alleged disability onset date, which led the ALJ to question whether his continuing unemployment was in fact due to his medical impairments. The ALJ also noted that Mr. McMillian reported in September 2008 that he was not looking for work because he could not afford to lose his counseling and medication assistance, he reported he was offered his old job at Oregon Steel Mills back but taking it would cause him to lose Social Security and medical

coverage, and he and his family members decided that it would be best for him not to pursue employment but to go back to college and finish his studies in computer programming.

Mr. McMillian asserts that his work history was not a clear and convincing reason to question his credibility because he was unable to work when he was incarcerated, his sporadic work history is consistent with an individual who has difficulty obtaining and maintaining employment due to mental illness, and it was reasonable for him to fear losing his counseling and medication benefits. Dkt. 15 at 16. While is it true that Mr. McMillian was unable to work while incarcerated, his poor work history outside of that period was a valid consideration for the ALJ. In addition, the ALJ properly considered Mr. McMillian's statements about his reasons for not seeking employment. Again, Mr. McMillian has offered alternative explanations for his poor work history. But it is the ALJ's interpretation that the Court must uphold. The ALJ's consideration of Mr. McMillian's poor work history was a clear and convincing reason to find him not fully credible.

In sum, the ALJ's credibility assessment was based on clear and convincing reasons supported by substantial evidence. The Court will not disturb the ALJ's credibility assessment.

**D.  The ALJ's residual functional capacity assessment and step five finding**

Mr. McMillian argues that the ALJ erred in assessing his residual functional capacity because she did not base her assessment on a proper evaluation of all the medical evidence and Mr. McMillian's testimony. Dkt. 15 at 17. The Court agrees that the ALJ erred by failing to include all the limitations opined by Dr. Webster and by failing to give valid reasons for rejecting the opinion of Ms. Owen. Accordingly, the ALJ must reevaluate Mr. McMillian's residual functional capacity after properly addressing these opinions. The ALJ must then complete the five-five disability evaluation process by evaluating whether there is any work in

the national economy Mr. McMillian can do, using the testimony of a vocational expert as necessary.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should reevaluate the weight to give to the opinions of Dr. Webster and Ms. Owen. The ALJ should then reassess Mr. McMillian's residual functional capacity and complete the five-step evaluation process.

Objections, if any to this Report and Recommendation must be filed and served no later than **September 20, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 6th day of September, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge